UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DUANE ZIEMBA | : | PRISONER<br>CIVIL NO. 3:02CV2185 (DJS)(TPS) |
| v. | : |  |
| JOHN J. ARMSTRONG, ET AL. | : | JULY 20, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    FACTS**

The plaintiff, a pro se inmate confined to the custody of the Connecticut Commissioner of Correction, brings this action by Amended Complaint dated May 12, 2003 ("Complaint") against four officials from the Connecticut, Department of Correction ("DOC"): former Commissioner John Armstrong, former Deputy Commissioner Jack Tokarz, Lynn Milling and Fred Levesque. Pursuant to the Interstate Corrections Compact, the plaintiff was incarcerated in the State of Nevada from January, 2000 until March, 2002 (Complaint, para. 15). Allegedly, while incarcerated in Nevada, the plaintiff was prescribed Paxil, a mental health medication, by Nevada correctional medical staff. (Complaint, para. 14). In March, 2002, the plaintiff was returned to Connecticut, where he is now incarcerated. The premise of the plaintiff's complaint is that during his "three week" transport from Nevada to Connecticut--a transport carried out by federal marshals--the plaintiff was denied his Paxil medication and allegedly suffered adverse effects. The plaintiff does not allege that the named defendants played any role in this transport. Instead, he alleges that the defendants were "placed on notice" of the plaintiff's need for Paxil by way of a letter that he wrote on February 20, 2002. Additionally, while this claim is quite vague

and ambiguous, the plaintiff also alleges that the defendants failed to remedy the "horrific treatment" that he received in Nevada as an act of retaliation. (Complaint, paras. 26, 27).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants submit that they are entitled to judgment as a matter of law on a number of grounds. First, plaintiff's action against the four defendants is legally deficient due to the plaintiff's failure to demonstrate the requisite personal involvement in the alleged constitutional violation of the named defendants. Additionally, based on the uncontroverted facts, the plaintiff cannot state a constitutional claim for retaliation or for deliberate indifference to his medical needs. Finally, even if the Court indulges in the assumption that the plaintiff's constitutional rights were somehow violated, the defendants would remain entitled to summary judgment on the basis of Qualified Immunity.

## II.    STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment "…if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In further comment regarding the use of summary judgment, the Supreme Court has stated:

> summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.

Celotex, Corp. v. Catrett, 477, U.S. 317, 327 (1986).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," Capital Imaging Assocs. v. Mohawk Valley Medical Assoc., 996 F.2d 537, 541 (2d Cir.), cert. denied, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims." Celotex Corp., at 323-324. "Summary Judgment serves as the ultimate screen to weed out truly insubstantiated lawsuits prior to trial." Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1598, 140 L.Ed.2d 759 (1998).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Those facts that are material fact will be identified by the substantive law governing the case. Anderson, 477 U.S. at 248. Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment. Knight v. Fire Insurance Company, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment. Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999). Additionally, the evidence presented in opposition to summary judgment must be presented in a manner consistent with its admissibility at trial. See First National Bank Co. of Clinton, Ill. V. Insurance Co. of North America, 606 F.2d 760 (7th Cir. (1979) (in ruling on summary judgment

3

motion, the Court properly relied upon documents and exhibits identified by affidavit).  Unsworn statements of the parties, letters addressed to the litigants from third person, and hearsay which does not fall under one or more exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not be properly considered.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct 1598 2 L.Ed.2d 142 (1970); Benyene v. Coleman Security Service, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stansy Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).  Moreover, plaintiff must point to "specific facts showing that there is a genuine issue for trial."  Rule 56(e); Anderson, 477 U.S. at 248; see also  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (Party may not rely on conclusory statements or an argument that the affidavits in support of the motion are not credible).  Plaintiff must also produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial.  Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).

### III. ALL OF PLAINTIFF'S CLAIMS AGAINST THE UNDERSIGNED DEFENDANTS MUST BE DISMISSED DUE TO A LACK OF PERSONAL INVOLVEMENT IN THE ALLEGED CONSTITUTION VIOLATIONS

In order to prevail on a claim under Section 1983 against an individual, a plaintiff must prove that the defendant (1) acted under color of state law, (2) in a manner that deprived the plaintiff of "any rights, privileges, or immunity secured by the Constitution."  42 U.S.C. § 1983, see Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912-13, 63 L.Ed.2d 420 (1981).  Section 1983 imposes liability for "conduct which 'subjects or causes to be subjected' the plaintiff to a deprivation of a right secured by the Constitution and laws."  Rizzo v. Goode, 423 U.S. 362, 370-71, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).  Accordingly, "personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under [Section] 1983."  Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).  A

plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); and plaintiff must prove a tangible connection between the acts of the defendant and the injuries suffered. Bass v. Jackson, 790 F.2d 260, 262 (2d Cir. 1986). In the present case, the plaintiff cannot demonstrate the personal involvement of the four undersigned defendants in any of his claims. Accordingly, the defendants are entitled to summary judgment.

Plaintiff's complaint is premised on the assertion that he was denied adequate medical care during his transport from Nevada to Connecticut in March, 2002. (See Complaint). However, plaintiff's claim clearly fails because it is uncontroverted that the four undersigned defendants had no involvement in the provision of medical care to the plaintiff during his transport from Nevada to Connecticut. According to the terms of the Interstate Corrections Compact, the responsibility for providing medical care for inmates who are housed out-of-state rests with the "receiving" facility, i.e., Nevada. (Milling Affidavit, para. 4). If a non-routine medical issue arises, such as a surgery or other costly procedure, the receiving facility will generally request approval or consult from the sending state. (Milling Affidavit, para. 6). However, the provision of a routine medication for an inmate, such as Paxil, is not a medical issue for which the "receiving" facility would contact the "sending" state. (Milling Affidavit, para. 8). Moreover, and dispositive of this case, if an inmate is being transported, it is the responsibility of the receiving facility to ensure that the authorities conducting the transport are provided with information about any active medications that the inmate may be taking and to provide the authorities with the actual medication. (Milling Affidavit, para. 13).

The plaintiff's transport from Nevada to Connecticut in March, 2002 was handled by the United States Marshals. (Milling Affidavit, para. 12). If, at the time of his transport from

Nevada to Connecticut, the plaintiff had an active prescription for Paxil that was prescribed by Nevada correctional officials, it was clearly the responsibility of the Nevada correctional officials to ensure that the United States Marshals were informed of the prescription and were provided with the medication to provide to the plaintiff. It is misplaced to suggest that any of the named defendants had personal involvement with this obligation. See Sekou v. Manson, H-77-163 (U.S.D.C., Newman, J., March 24, 1977) (Plaintiff, a Connecticut state prisoner, transferred to Arizona, does not have a claim against Connecticut officials for the denial of medical care because there is no practical possibility for the defendant from 3,000 miles away to evaluate plaintiff's entitlement to medical treatment.)

The sole basis for the plaintiff's argument that the undersigned defendants had personal "responsibility" for his medical care during his transport from Nevada to Connecticut is a February 20, 2002 letter that the plaintiff wrote to the defendants, allegedly placing the defendants on "notice of his need for mental health medication." However, a discerning review of this attached letter (Attachment B) clearly demonstrates that it fails to accomplish what the plaintiff claims and, in fact, *supports* the defendants' entitlement to Summary Judgment. The plaintiff's initial complaint in his February 20, 2002 letter is that he has a hard mass under his right eye which requires medical attention. (Attachment B, para. 3).[1] Secondly, the plaintiff writes:

> I have mental health serious matters which I must receive treatment for, before being transferred back to CT. (Para. 4).

> Please do not place me in transport until I receive medical treatment here at Ely State Prison, for the foregoing serious conditions. As you are aware, I do not wish to delay my transfer back to CT but the above is mandated and out of my control. (Para. 5).

---

[1] Plaintiff does not reference this eye condition in either his original complaint or amended complaint, accordingly, it is assumed that any claims pertaining to this issue were resolved or have not been pursued.

6

>   Please take immediate action to ensure that I am not transferred anywhere until first receiving the foregoing treatment. (Para. 6).
>
>   Please take immediate action to ensure that I am not placed in transport until I receive the medical treatment and until I recover. (Para. 8).

It is evident that the intent of plaintiff's February 20, 2002 letter was not to put the defendants on notice that his mental health treatment and medication were to be continued during his transport from Nevada to Connecticut. To the contrary, the clear purpose of plaintiff's letter was to complain about the medical and mental health care that he was currently receiving at Nevada and to *delay his transfer back to Connecticut* until "appropriate" medical care was received. This letter fatally undermines the plaintiff's case because the premise of his complaint is that he was being appropriately treated by Nevada officials with Paxil (Complaint, para. 20) and that this treatment was "unjustly stopped" and "denied" when he was transported to Connecticut. (Complaint, para. 21). In sum, plaintiff's letter not only fails to implicate the defendants but proves their entitlement to summary judgment.

Furthermore, while plaintiff's February 20, 2002 letter fails to implicate the defendants in any of the plaintiff's claims, it is noteworthy that plaintiff's letter was *not* ignored by DOC officials. Indeed, by letter dated February 28, 2002 defendant Milling appropriately responded to plaintiff's letter. (Attachment C). In the unlikely event that the Court determines that defendant Milling's response to plaintiff's February 20, 2002 letter was constitutionally suspect, the other three defendants named in this case would nonetheless be entitled to summary judgment for deferring to their colleague to respond to plaintiff's complaints. It is well established that the fact that a correctional official *ignored* a letter alleging unconstitutional conduct is not enough to establish personal involvement. Thomas v. Coombe, 1998 U.S. Dist. LEXIS 10519 (S.D.N.Y. July 13, 1998); Gayle v. Lucas, 1998 U.S. Dist. LEXIS 3919 (S.D.N.Y. March 30, 1998); Higgins v. Coombe, 1997 U.S. Dist. LEXIS 8418 (S.D.N.Y. June 16, 1997). In the present case,

the other three defendants, Armstrong, Tokarz, and Levesque, did not ignore the plaintiff's letter but rather relied on their colleague to respond, which she did in an appropriate fashion. (See Attachment C). Accordingly, defendants Armstrong, Tokarz, and Levesque are entitled to summary judgment. See Burgess v. Morse, 259 F.Supp. 2d 240 (W.D.N.Y. 2003) (It would make little sense, and would expose (the Commissioner) to immeasurable personal liability if he could be personally accountable for any of the thousands of letters he receives each year. Because the record here shows that plaintiff's claims based on a single letter, this is insufficient to show the personal involvement necessary to establish § 1983 liability.)

### IV.    PLAINTIFF FAILS TO STATE A RETALIATION CLAIM

Construing the plaintiff's complaint in the most favorable light, he attempts to assert a retaliation claim based on his exercise of his First Amendment rights. (Complaint, paras. 26, 27). The Second Circuit has appropriately recognized "the ease with which claims of retaliation may be fabricated, [and the need to] examine prisoners' claims of retaliation with care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). Accordingly, retaliation claims are subject to the standard that even in a pro se civil rights action, vague and conclusory allegations are insufficient to state a cause of action. Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (A complaint which alleges retaliation in wholly conclusory terms may be safely dismissed on the pleading alone.); see also Barr v. Abrams, 810 F.2d 358, 3673 (2d Cir. 1987) (Complaints relying on civil rights statutes are insufficient unless they contain some specific allegations.)

In the present case, plaintiff's retaliation claims are fatally vague and conclusory. He alleges that the defendants "failed to act on his numerous complaints of the horrific treatment in Nevada" (para. 26) but fails to identify his specific complaints or the "horrific treatment" he allegedly endured in Nevada. Moreover, as previously discussed, plaintiff's allegations are

contradicted *by his own lawsuit* which complains that the defendants are to blame for failing to ensure the *continuation* of the treatment followed by Nevada officials.

Plaintiff's second claim of retaliation is that the defendants' "totally failed to act on his letter dated February 20, 2002" (Complaint, para. 26). As discussed, this allegation is patently false as the defendants did respond to plaintiff's letter by contacting Nevada officials and arranging for an ophthalmologist. (See Attachment C). Claims of retaliation must be examined with skepticism and care and broad and unsubstantiated allegations of retaliation will not defeat a motion for summary judgment. Flaherty, 713 F.2d at 13. Accordingly, plaintiff's vague and conclusory claims of retaliation must be dismissed.

V. **EVEN IF THE COURT FINDS THAT THE PLAINTIFF HAS ASSERTED THE VIOLATION OF A CONSTITUTIONAL RIGHT, THE UNDERSIGNED DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

The doctrine of qualified immunity shields government employees who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982). The Supreme Court has stated that there is a strong public interest in protecting public officials from the costs associated with the defense of damages actions. That interest is best served by a defense that permits insubstantial lawsuits to be quickly terminated. Crawford-El, 118 S.Ct. 1552-53. Thus, the defense of qualified immunity should be resolved "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 116 L.Ed.2d 589, 112 S.Ct. 534 (1991).

Where a qualified immunity defense is raised, a court must make a two-fold inquiry. First, the court must determine whether the facts, "taken in the light most favorable to the party

9

asserting the injury, … show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 150 L.Ed.2d 272, 121 S.Ct. 2151 (2001).  Second, even where such a constitutional right has been violated, the government employee is entitled to qualified immunity "'if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (quoting Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 250 (2d Cir. 2001)); see also Giacalone v. Abrams, 850 F.2d 79 (2d Cir. 1988).

"A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" Anderson v. Recore, 317 F.3d at 197 (alterations in original) (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)).  For a right to be clearly established, it is not sufficient for a general constitutional right to have been recognized; rather, the right must be established in "a more particularized … sense," Anderson v. Creighton, 483 U.S. 635, 640, 97 L.Ed.2d 523, 107 S.Ct. 3034 (1987) – that is, "in light of the specific context of the case," Saucier, 533 U.S. at 201.

As stated, it strains the imagination to suggest that the defendants violated the plaintiff's constitutional rights during this incident.  However, even if this assumption is made, it cannot be reasonably argued that (1) the law concerning a sending state's obligation to provide medical care to an inmate during his transport back to the sending state was defined with reasonable clarity and that a reasonable defendant would understand from the law that his conduct was unlawful.  As explained, the applicable law called for the Nevada correctional officials to provide for the plaintiff's medication needs during the plaintiff's transport.  Certainly, in light of

this law, it was objectively reasonable for the defendants to rely on the Nevada officials to discharge their responsibility. Accordingly, the defendants are entitled to summary judgment on the basis of Qualified Immunity.

## VI.    CONCLUSION

For all of the foregoing reasons, the defendants request the Court to grant their Motion for Summary Judgment.

                                      DEFENDANTS
                                      John J. Armstrong, et al.

                                      RICHARD BLUMENTHAL
                                      ATTORNEY GENERAL


BY:    \_\_\_/s/_____
        Matthew B. Beizer
        Assistant Attorney General
        110 Sherman Street
        Hartford, CT  06105
        Federal Bar #ct16304
        E-Mail:  matthew.beizer@po.state.ct.us
        Tel:  (860) 808-5450
        Fax: (860) 808-5591


## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 20th day of July, 2004:

    Duane Ziemba #128963
    Northern Correctional Institution
    P.O. Box 665
    Somers, CT  06071

                                          \_\_\_/s/_____
                                          Matthew B. Beizer
                                          Assistant Attorney General