<u>United States District Court</u>
<u>District Of Connecticut</u>

Duane Ziemba

Vs.

John J. Armstrong, et al.

Civil Action No.
3:02 cv 2185 (DTS)(TPS)

August 31, 2004

<u>Exhibits - Affidavit Of Duane Ziemba</u>
<u>In Support Of Plaintiff's Opposition To</u>
<u>Defendants' Motion For Summary</u>
<u>Judgment</u>

I, Duane Ziemba, hereby declare under penalty of perjury:

1. Attached hereto as Exhibit A is a true and correct copy of the Interstate Corrections Compact;

2. Attached hereto as Exhibit B is a true and correct copy of the letter by defendant Milling to the plaintiff dated November 23, 2001;

3. Attached hereto as Exhibit C is a true and

correct copy of the plaintiff's letter dated February 20, 2002 to defendants Armstrong, Tokarz, Milling and Levesque;

4. Attached hereto as Exhibit D is a true and correct copy of 2 letters dated February 28, 2002 — one by defendant Armstrong and one by defendant Milling;

5. Attached hereto as Exhibit E is a true and correct copy of plaintiff's medical records;

6. Attached hereto as Exhibit F is a true and correct copy of Affidavit by Pamela Ziemba;

7. Attached hereto as Exhibit G is a true and correct copy of plaintiff's medical records;

8. Attached hereto as Exhibit H is a true and correct copy of Inmate Grievance level 1 filed by plaintiff dated April 24, 2002, level 2 dated May 25, 2002 and level 3 dated June 25, 2002.

#2

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Signed: *Duane Ziemba*
Duane Ziemba

Sworn and Subscribed before me on this 30th day of August 2004

_CCS Bradway_
Notary Public

BRIAN BRADWAY
NOTARY PUBLIC
MY COMMISSION EXPIRES 01/31/2008

# 3

## Certification

I hereby certify that a copy of the foregoing was mailed to the following on this 13th day of September 2004:

Matthew B. Beizer
Assistant Attorney General
110 Sherman Street
Hartford, CT. 06105

By: *Duane Ziemba*
Duane Ziemba

#4

# EXHIBIT A

**Sec. 18-104. Administration of compact.** The Commissioner of Correction shall administer the provisions of this compact, and in the performance of such duty he may delegate his authority to an employee of the department.

History: 1969 act made commissioner of correction responsible for compact administration rather than State Prison warden and superintendents of State Farm for Women and Connecticut Reformatory and allowed delegation of duty to department employee rather than to deputy wardens or deputy superintendents.

(1961, P.A. 326, S. 3; 1969, P.A. 471.)

## CHAPTER 327

## INTERSTATE CORRECTIONS COMPACT

**Sec. 18-105. Short title: Interstate Corrections Compact.** This chapter may be cited as the "Interstate Corrections Compact".

(1973-354, S. 1, 4.)

**Sec. 18-106. Compact.** The Interstate Corrections Compact is hereby enacted into law and entered into by this state with any other states legally joining therein in the form substantially as follows:

### INTERSTATE CORRECTIONS COMPACT

#### ARTICLE I

The party states, desiring by common action to fully utilize and improve their institutional facilities and provide adequate programs for the confinement, treatment and rehabilitation of various types of offenders, declare that it is the policy of each of the party states to provide such facilities and programs on a basis of cooperation with one another, thereby serving the best interests of such offenders and of society and effecting economies in capital expenditures and operational costs. The purpose of this compact is to provide for the mutual development and execution of such programs of cooperation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources.

#### ARTICLE II

As used in this compact unless the context clearly requires otherwise:

(a) "State" means a state of the United States; the United States of America; a territory or possession of the United States; the District of Columbia; the Commonwealth of Puerto Rico.

(b) "Sending state" means a state party to this compact in which conviction or court commitment was had.

(c) "Receiving state" means a state party to this compact to which an inmate is sent for confinement other than a state in which conviction or court commitment was had.

(d) "Inmate" means a male or female offender who is committed, under sentence to or confined in a penal or correctional institution.

(e) "Institution" means any penal or correctional facility, including but not limited to a facility for the mentally ill or mentally defective, in which inmates as defined in (d) above may lawfully be confined.

#### ARTICLE III

(a) Each party state may make one or more contracts with any one or more of the other party states for the confinement of inmates on behalf of a sending state in institutions situated within receiving states. Any such contract shall provide for:

(1) Its duration.

(2) Payments to be made to the receiving state by the sending state for inmate maintenance, extraordinary medical and dental expenses, and any participation in or receipt by inmates of rehabilitative or correctional services, facilities, programs or treatment not reasonably included as part of normal maintenance.

(3) Participation in programs of inmate employment, if any; the disposition or crediting of any payments received by inmates on account thereof; and the crediting of proceeds from or disposal of any products resulting therefrom.

(4) Delivery and retaking of inmates.

(5) Such other matters as may be necessary and appropriate to fix the obligations, responsibilities and rights of the sending and receiving states.

(b) The terms and provisions of this compact shall be a part of any contract entered into by the authority of or pursuant thereto, and nothing in any such contract shall be inconsistent therewith.

#### ARTICLE IV

(a) Whenever the duly constituted authorities in a state party to this compact, and which has entered into a contract pursuant to Article III, shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

(b) The appropriate officials of any state party to this compact shall have access, at all reasonable times, to any institution in which it has a contractual right to confine inmates for the purpose of inspecting the facilities thereof and visiting such of its inmates as may be confined in the institution.

(c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state; provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of Article III.

(d) Each receiving state shall provide regular reports to each sending state on the inmates of that sending state in institutions pursuant to this compact including a conduct record of each inmate and certify said record to the official designated by the sending state, in order that each inmate may have official review of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state and in order that the same may be a source of information to the sending state.

(e) All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

(f) Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state, or of the receiving state if authorized by the sending state. The receiving state shall provide adequate facilities for such hearings as may be conducted by appropriate officials of a sending state. In the event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state and a record of the hearing or hearings as prescribed by the sending state shall be made. Said record together with any recommendations of the hearing officials shall be transmitted forthwith to the official or officials before whom the hearing would have been had if it had taken place in the sending state. In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall be solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state.

(g) Any inmate confined pursuant to this compact shall be released within the territory of the sending state unless the inmate, and the sending and receiving states, shall agree upon release in some other place. The sending state shall bear the cost of such return to its territory.

(h) Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his status changed on account of any action or proceeding in which he could have participated if confined in any appropriate institution of the sending state located within such state.

(i) The parent, guardian, trustee, or other person or persons entitled under the laws of the sending state to act for, advise, or otherwise function with respect to any inmate shall not be deprived of or restricted in his exercise of any power in respect of any inmate confined pursuant to the terms of this compact.

ARTICLE V

(a) Any decision of the sending state in respect of any matter over which it retains jurisdiction pursuant to this compact shall be conclusive upon and not reviewable within the receiving state, but if at the time the sending state seeks to remove an inmate from an institution in the receiving state there is pending against the inmate within such state

any criminal charge or if the inmate is formally accused of having committed within such state a criminal offense, the inmate shall not be returned without the consent of the receiving state until discharged from prosecution or other form of proceeding, imprisonment or detention for such offense. The duly accredited officers of the sending state shall be permitted to transport inmates pursuant to this compact through any and all states party to this compact without interference.

(b) An inmate who escapes from an institution in which he is confined pursuant to this compact shall be deemed a fugitive from the sending state and from the state in which the institution is situated. In the case of an escape to a jurisdiction other than the sending or receiving state, the responsibility for institution of extradition or rendition proceedings shall be that of the sending state, but nothing contained herein shall be constructed to prevent or affect the activities of officers and agencies of any jurisdiction directed toward the apprehension and return of an escapee.

ARTICLE VI

Any state party to this compact may accept federal aid for use in connection with any institution or program, the use of which is or may be affected by this compact or any contract pursuant hereto and any inmate in a receiving state pursuant to this compact may participate in any such federally aided program or activity for which the sending and receiving states have made contractual provision, provided that if such program or activity is not part of the customary correctional regimen, the express consent of the appropriate official of the sending state shall be required therefor.

ARTICLE VII

This compact shall enter into force and become effective and binding upon the states so acting when it has been enacted into law by any two states. Thereafter, this compact shall enter into force and become effective and binding as to any other of said states upon similar action by such state.

ARTICLE VIII

This compact shall continue in force and remain binding upon a party state until it shall have enacted a statute repealing the same and providing for the sending of formal written notice of withdrawal from the compact to the appropriate officials of all other party states. An actual withdrawal shall not take effect until one year after the notices provided in said statute have been sent. Such withdrawal shall not relieve the withdrawing state from its obligations assumed hereunder prior to the effective date of withdrawal. Before the effective date of withdrawal, a withdrawing state shall remove to its territory, at its own expense, such inmates as it may have confined pursuant to the provisions of this compact.

ARTICLE IX

Nothing contained in this compact shall be construed to abrogate or impair any agreement or other arrangement which a party state may have with a nonparty state for the confinement, rehabilitation or treatment of inmates nor to repeal any other laws of a party state authorizing the making of cooperative institutional arrangements

DEPARTMENT OF CORRECTION

## ARTICLE X

The provisions of this compact shall be liberally construed and shall be severable. If any phrase, clause, sentence or provision of this compact is declared to be contrary to the constitution of any participating state or of the United States or the applicability thereof to any government, agency person or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person or circumstance shall not be affected thereby. If this compact shall be held contrary to the constitution of any state participating therein, the compact shall remain in full force and effect as to the remaining states and in full force and effect as to the state affected as to all severable matters.

(P.A. 73-354, S. 2, 4.)

**Sec. 18-107. Duty of Commissioner of Correction.** The Commissioner of Correction is authorized and directed to do all things necessary or incidental to the carrying out of the compact in every particular and he may in his discretion delegate this authority to other persons.

(P.A. 73-354, S. 3, 4.)

# TITLE 19
## PUBLIC HEALTH AND SAFETY
### CHAPTER 333*

# DEPARTMENT OF HEALTH SERVICES

*See chapter 368a (Sec. 19a-1 et seq.).

**Sec. 19-1. Composition of department.** Section 19-1 is repealed.

(1949 Rev., S. 3797; 1959, P.A. 148, S. 1; 1972, P.A. 113, S. 1; P.A. 75-638, S. 1, 23; P.A. 77-614, S. 609, 610.)

**Secs. 19-1a, 19-1b, 19-2 and 19-2a.** Transferred to Chapter 368a, Secs. 19a-1 to 19a-4, inclusive.

**Sec. 19-3. Public Health Council. Meetings.** Section 19-3 is repealed.

(1949 Rev., S. 3799; September, 1957, P.A. 11, S. 13; 1959, P.A. 148, S. 3; February, 1965, P.A. 261, S. 1; 1969, P.A. 16; P.A. 73-337, S. 1, 2; P.A. 76-139, S. 1; P.A. 77-614, S. 609, 610.)

**Sec. 19-3a.** Transferred to Chapter 368a, Sec. 19a-7.

**Sec. 19-3b. Effective date for establishment of State-Wide Health Coordinating Council. Obsolete.**

(P.A. 75-562, S. 8.)

**Secs. 19-4 and 19-4a.** Transferred to Chapter 368a, Secs. 19a-5 and 19a-6, respectively.

**Sec. 19-4b. Boards and commissions within the department: Department powers relative thereto.** Section 19-4b is repealed.

(1959, P.A. 148, S. 21; P.A. 77-614, S. 327, 587, 610; P.A. 78-303, S. 85, 136; P.A. 80-484, S. 175, 176.)

**Secs. 19-4c to 19-4h.** Transferred to Chapter 368a, Secs. 19a-460 to 19a-468, inclusive.

**Secs. 19-4i to 19-4q.** Transferred to Chapter 368a, Secs. 19a-8 to 19a-16, inclusive.

**Sec. 19-4r. Complaints re certain health practitioners.** Section 19-4r is repealed.

(P.A. 80-484, S. 136, 176; P.A. 81-471, S. 70, 71; 81-472, S. 42, 159.)

**Secs. 19-4s to 19-4y.** Transferred to Chapter 368a, Secs. 19-17 to 19a-23, inclusive.

# EXHIBIT B



**STATE OF CONNECTICUT**
DEPARTMENT OF CORRECTION
*OFFENDER CLASSIFICATION & POPULATION MANAGEMENT*
*INTERSTATE COMPACT OFFICE*
*1151 EAST STREET SOUTH*
*SUFFIELD, CONNECTICUT 06078*

November 23, 2001

Duane Ziemba
NV#64026 CT#128963
Ely State Prison
P.O. Box 1989
Ely, Nevada 89301

Dear Mr. Ziemba:

I am responding to your inmate request form dated 11/14/01 in which you state you need a list of the names and addresses of Connecticut DOC officials in the chain of command to address Connecticut DOC matters.

The Inmate Handbook for inmates incarcerated Out of State, page 3, Section 11, (excerpt attached) indicates grievances about the Connecticut Department of Correction may be addressed through our grievance procedure. They should be submitted as noted below:

Initial inmate request form and level 1 grievance – Lynn Milling, Major, 1151 East St., South, Suffield, CT 06078.

Level 2 grievances – Fred Levesque, Director, OCPM, 1151 East St., South, Suffield, CT 06078.

Level 3 grievances – Commissioner Armstrong, Department of Correction Central Office, 24 Wolcott Hill Road, Wethersfield, CT 06109.

Any other inquires or issues regarding Connecticut issues, for which you are not submitting a grievance should be addressed to Lynn Milling, Major, 1151 East St., South, Suffield, CT 06078. The chain of command above Lynn Milling is noted below:

Fred Levesque, Director, OCPM, 1151 East St., South, Suffield, CT 06078.

Deputy Commissioner, Tokarz, Department of Correction Central Office, 24 Wolcott Hill Road, Wethersfield, CT 06109.

Commissioner Armstrong, Department of Correction Central Office, 24 Wolcott Hill Road, Wethersfield, CT 06109.

6

As noted in the aforementioned Inmate Handbook, Section 11, complaints or grievances for issues within that jurisdiction where you are incarcerated should be addressed through the jurisdiction's process.

Sincerely,

*[signature]*

Lynn Milling
Major, Interstate Compact Office

Attachment

cc: Paula Miller, Nevada Department of Prisons
Fred Levesque, Director, OCPM

# EXHIBIT C

8

By: Diane Ziemba, In Ely, Nevada

Commissioner Armstrong          February 20, 2002
Deputy Commissioner Tokars
Major Milling - Interstate Compact Office
Director Levesque - Interstate Compact Office
Department of Corrections
24 Wolcott Hill Road
Wethersfield, CT. 06109

Re: Serious Medical Condition / Needed Medical Treatment Before Transfer Back To CT.

Dear Commissioner Armstrong

1. A copy of this letter has been mailed to your above agents. Respectfully I am requesting for you and your above agents to immediately take action with respect to the following:

2. Before you transfer me back to the CT. D.O.C. as ordered by the Court, I need medical treatment for the following serious medical conditions:

3. For two (2) months now I have had a hard mass directly under my right eye, which is causing me severe pain. Underneath my right eye and my eye have been seriously

9

swollen. This serious medical condition is causing me serious pain, it is causing me serious vision problems due to the mass goes directly into the orbit of my eye, and it's causing me serious headaches and to be physically sick due to the pain. I have been denied adequate medical treatment for this serious condition. I am actively seeking adequate medical treatment. To transfer me back to CT, before you ensure that I am provided adequate medical treatment and I recover, it will be unconstitutional.

4. Additionally I have mental health serious matters which I must receive treatment for, before being transferred back to CT.

5. Please do not place me in transport until I receive medical treatment here at Ely State Prison, for the foregoing serious conditions. As you are aware, I do not wish to delay my transfer back to CT. But the above is mandated and out of my control.

6. I am under your custody and care, please

10

Page Two — February 20, 2002

take immediate action to ensure that I am not transferred anywhere until first receiving the foregoing treatment.

7. When you transferred me to Nevada I in fact had a serious medical condition, grievances pending to seek medical treatment. No medical staff even saw me, I was completely denied medical treatment and forcefully transferred to Nevada, which inflicted torture.

8. Moreover, I am under your custody and care, you are liable with respect to the foregoing. Please take immediate action to ensure that I am not placed in transport until I receive the medical treatment and until I recover.

Thank you very much for your time in these matters.

cc.

Respectfully Submitted
Duane Ziemba
Duane Ziemba #64026
Ely State Prison
P.O. Box 1989
Ely, Nevada 89301

# EXHIBIT D

12



# STATE OF CONNECTICUT
## DEPARTMENT OF CORRECTION
### 24 WOLCOTT HILL ROAD
### WETHERSFIELD, CONNECTICUT 06109

John J. Armstrong
Commissioner

February 28, 2002

Mr. Duane Ziemba #64026
Ely State Prison
P.O. Box 1989
Ely, Nevada 89301

Dear Mr. Ziemba:

I am in receipt of your letters dated February 15th, 16th and 20th 2002. In response to your concern as to who advised me not to communicate with you, I have advised you numerous times that any claim which you have written to me that relates to your pending litigation should be referred to the Office of the Attorney General. Your claim that I refuse to communicate with you is completely false, as I respond to each letter that you send to me.

With regard to your letter concerning the problem with your eye, I have been advised by the Interstate Compact Office that your medical concerns are being addressed by both Connecticut and Nevada officials and that you will be seen by an ophthalmologist for consultation. In the future, you should address your medical issues with the Nevada officials.

Sincerely,

John J. Armstrong
Commissioner

cc:   Deputy Commissioner Dennis C. Coyle
      Major Lynn Milling, Interstate Compact Office

*An Equal Opportunity Employer*



**STATE OF CONNECTICUT**
*DEPARTMENT OF CORRECTION*
*OFFENDER CLASSIFICATION & POPULATION MANAGEMENT*
*INTERSTATE COMPACT OFFICE*
*1151 EAST STREET SOUTH*
*SUFFIELD, CONNECTICUT 06078*

**FILE COPY**

February 28, 2002

Duane Ziemba
NV# 64026  CT# 128963
Ely State Prison
P.O. Box 1989
Ely, Nevada  89301

Dear Mr. Ziemba:

I am responding to your letter dated 2/20/02 in which you indicate you are having medical problems with your eye. Your mother also called the Department on 2/26/02, concerned over your eye.

We contacted the Nevada officials regarding your eye and our Health Services staff have conferred with Health Services staff in Nevada. You will be seen by an ophthalmologist to assess your condition. Our Health Services staff will coordinate with Nevada staff as to the appropriate course of action following the ophthalmology consultation.

You should continue to bring any medical concerns to the attention of appropriate staff in Nevada.

Sincerely,

Lynn Milling
Major, Interstate Compact

Cc:   Commissioner Armstrong
      Deputy Commissioner Tokarz
      Fred Levesque, Director, OCPM
      Pat Ottolini, Director of Nursing and Field Services
      Paula Miller, Nevada Interstate Coordinator

14

# EXHIBIT E

| DATE & TIME | PROB | DISCIP | PROGRESS NOTES |
|---|---|---|---|
| 4/24/01 1530 | 1 | MD 4 | CC: Panic Attacks<br>HPI: Recurrent panic attacks with palpn, SOB, trembling, sweating, fear of dying since transfer from Connecticut over a year ago. Resisted seeking medical attention because he did not want a mental health label. No agoraphobic sx. C/O sadness, anhedonia at times, decreased concentration, no suicidal ideation.<br>PpsychHx: None<br>PMHx: NKDA, no serious illnesses.<br>FHx: Positive for panic/depression in mother and brother. No suicides, no hospn.<br>SHx: Negative for violence. Positive for larceny. Meets criteria for conduct disorder. Placed in juvenile program at 10th grade. Apparently a car thief. No hx sepn anxiety<br>MSE: Muscular 30ish anglo male with short hair. Grooming/hygiene okay. No abnormal motor activity. Makes eye contact. Speech is fluent. Thoughts are goal directed. Serious demeanor and appears anxious. Smiled twice in 30 minutes. Denies AH, VH, TI, TB, Special Powers. +/- paranoia (was beaten in Connecticut and claims to have been told he would be killed out of state). Formal cognitive testing not done. Judgment and insight okay.<br>DX: Axis I: Panic Disorder without Agoraphobia<br>       Depression NOS<br>    Axis II: ASPD by hx<br>    Axis III: Negative<br>    Axis IV: Incarceration, separation from family.<br>    Axis V: 45-55.<br>Tx Plan: Patient informed of choices of imipramine and SSRIs. Explained that KOP BZDs not possible. Side effects of PAXIL reviewed with patient.<br>    Begin Paxil at 10 mg/day with increases to 20 mg after 7 days.<br>    Patient informed that PAXIL may intensify anxiety and increase the frequency of panic attacks in the first few weeks.<br>                                                                       [signature] MD |

NEVADA DEPARTMENT OF PRISONS      NAME ZIEMBA Duane
                                                                              LAST          FIRST     MI

16    PROGRESS NOTES            DOP# 64026

DOP 2519 (10/94)