UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DUANE ZIEMBA                   :
                               :         PRISONER
     v.                        : Case No. 3:02CV2185 (DJS)(TPS)
                               :
JOHN J. ARMSTRONG, et al.[1]   :

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Duane Ziemba ("Ziemba"), currently confined at the Northern Correctional Institution in Somers, Connecticut, commenced this civil rights action pursuant to 28 U.S.C. § 1915. Ziemba alleges that defendants were deliberately indifferent to his serious mental health needs.  Defendants have filed a motion for summary judgment on several grounds.  For the reasons that follow, defendants' motion is granted.

I.  Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO

---

[1] The named defendants are John Armstrong, Jack Tokarz, Fred Levesque and Lynn Milling.  All defendants are named in their individual capacities only.

Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986),

cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).

II.  Facts[2]

Ziemba is a Connecticut-sentenced inmate.  In January 2000, he was transferred to Nevada and confined there pursuant to the Interstate Corrections Compact ("Compact").  The Compact does not indicate whether the sending state, here Connecticut, or the receiving state, here Nevada, is responsible for an inmate's medical care.  According to the specific agreement entered pursuant to the Compact, however, the receiving state is responsible for providing routine medical care to inmates transferred there.  Non-routine medical services, such as surgery or treatment by a specialist, must be approved by the sending state.

Over one year after his transfer, Ziemba complained that he was experiencing panic attacks.  The only medical evaluation in the file reveals that, in April 2001, Ziemba was diagnosed as suffering from a panic disorder without agoraphobia and depression with no observable symptoms.  Nevada medical staff prescribed Paxil.  Ziemba took Paxil in varying strengths from April 2001 until March 19, 2002.

In November 2001, Ziemba requested information about the

---

[2]The facts are taken from defendants' Local Rule 56(a)1 Statement, Ziemba's Local Rule 56(a)2 Statement and the affidavits and exhibits filed in support of and in opposition to the motion for summary judgment.

proper persons to whom he should address grievances. By letter dated November 23, 2001, defendant Milling responded that any grievances about the Connecticut Department of Correction should be addressed to her. She also identified the appropriate chain of command and provided the names and addresses of her supervisors. In addition, defendant Milling informed Ziemba that any complaints or grievances regarding issues arising in Nevada should be addressed through the Nevada grievance process.

On February 20, 2002, Ziemba sent copies of a letter to each defendant. He stated that he required medical treatment for an eye condition and mental health treatment. While stating that he did not intend to delay his transfer, Ziemba requested that he not be transported back to Connecticut until after he received the requested medical treatment. Defendants Armstrong and Milling responded to Ziemba's letter.

On February 28, 2002, defendant Milling informed Ziemba that health officials from Connecticut and Nevada had conferred regarding his medical needs and agreed that Ziemba would be seen by an ophthalmologist. Milling did not specifically reference Ziemba's mental health treatment in her letter but directed him to address routine medical concerns with Nevada officials. At the time he wrote the letter, Ziemba was receiving Paxil for his mental health issues. Defendant Armstrong stated to Ziemba that

5

he had been informed that Ziemba's medical concerns were being addressed.  Armstrong also advised Ziemba to address his medical issues with the Nevada correctional officials.  Ziemba wrote no further letters prior to his transfer.

Between March 19 and 28, 2002, the United States Marshal Service transported Ziemba from Nevada to Connecticut.  During this time, Ziemba was not given Paxil.  Instead, Nevada correctional officials mailed the remainder of the Paxil to Ziemba's mother in Connecticut.  Prior to his arrival in Connecticut, Ziemba did not inform any defendant that his medication had been discontinued.

III. Discussion

Ziemba asserts two claims in his amended complaint: (1) that defendants denied him adequate mental health medication and treatment in retaliation for prior litigation, and (2) that defendants were deliberately indifferent to his serious mental health needs by failing to act in response to his February 2002 letter complaining about his treatment in Nevada.  He alleges that the denial of Paxil while he was being transported from Nevada to Connecticut caused him to suffer panic attacks, which made him feel as if he were having a heart attack and caused difficulty breathing and profuse perspiration.  He also alleges that this emotional distress exacerbated his fear of flying.

6

Defendants raise three grounds in support of their motion for summary judgment:  (1) Ziemba cannot demonstrate that defendants were personally involved in the alleged constitutional violations, (2) Ziemba fails to state a claim for retaliatory conduct, and (3) defendants are protected by qualified immunity. In response to the motion for summary judgment, Ziemba concedes that he fails to state a claim for retaliatory conduct.  (See Pl.'s Mem., Doc. #39-1, at 16, § III B.)  Thus, the court considers any claim of retaliation to be withdrawn and addresses only the deliberate indifference claims.

Defendants first argue that Ziemba has failed to demonstrate their personal involvement in the claims regarding deliberate indifference to mental health care.  No defendant is a mental health care provider.  In addition, the events giving rise to Ziemba's claims occurred in Nevada while all defendants were in Connecticut.  Thus, the court considers Ziemba's claims under a theory of supervisory liability.

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002).  Section 1983 imposes liability only on the official causing the violation. Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases.  See Blyden v. Mancusi, 186 F.3d 252, 264 (2d

7

Cir. 1999).

> [A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury.

Leonard, 282 F.3d at 140.

To prove deliberate indifference, Ziemba must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference" to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976). He must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See id. at 104-05. Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)). Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the

8

deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain").  Defendants do not dispute that Ziemba's panic attacks are a serious medical need.  Thus, for purposes of deciding this motion, the court assumes that the Ziemba's condition satisfies the requirement of a serious medical need.

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, Ziemba also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."  Hathaway, 37 F.3d at 66.  "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

9

Thus, to prevail on his claim of supervisory liability, Ziemba must demonstrate that defendants inferred that their failure to take further action in response to Ziemba's letter would result in a substantial risk of serious harm. "'[A]n official's failure to alleviate a significant risk that he should have perceived but did not' will not serve as a basis for an Eighth Amendment violation. The subjective element must rise to the level of recklessness, not mere negligence." Burgess v. Morse, 259 F. Supp. 2d 240, 249 (W.D.N.Y. 2003) (quoting Farmer, 511 U.S. at 838).

Ziemba states, and defendants do not dispute, that he sent copies of his February 20, 2002 letter to each defendant. In the letter, Ziemba complained at great length about his need for medical treatment for a mass near his right eye. In one paragraph he also stated that he needed mental health treatment before transfer.

Defendants have provided the affidavit of defendant Milling concerning the agreement, made pursuant to the Compact, between Nevada and Connecticut correctional officials. The agreement provided that routine medical and mental health care is provided by the receiving state, not the sending state.

Defendants Milling and Armstrong responded to the letter. Defendant Milling had Connecticut medical personnel arrange for

Ziemba to be seen by an ophthalmologist, a examination that would not have been included in the routine medical care that was provided by the receiving state and required approval of the sending state. In addition, she told Ziemba to address his routine treatment questions to Nevada officials. Defendant Armstrong responded to the letter by referencing the content of the response provided by defendant Milling.

Further, at the time defendants Armstrong and Milling responded to Ziemba's letter, he was being treated with Paxil. Although Ziemba stated in his letter that he has serious mental health needs requiring treatment, he has provided no objective evidence suggesting that Paxil was an inappropriate treatment for his panic attacks. In opposition to defendants' motion for summary judgment, he states that he was not afforded medication, crisis intervention and therapy and contends that this lack of proper treatment prompted his February 20, 2002 letter. Ziemba, however, concedes that he was treated with Paxil prior to writing the February 20, 2002 letter. Further, although Ziemba was first prescribed Paxil in April 2001, he provides no evidence that this treatment was inappropriate or that he ever challenged his mental health treatment before he was scheduled for transport back to Connecticut.

Defendant Milling relied on the agreement between Nevada and

11

Connecticut regarding Ziemba's routine mental health care. Ziemba has provided no evidence that defendant Milling's reliance on the agreement, and defendant Armstrong's reliance on defendant Milling to respond to Ziemba's letter, caused either defendant to infer that a serious risk of harm would result. See Burgess 259 F. Supp. 2d at 250 (holding that action of Commissioner, acting through subordinate, advising inmate to first address concerns with facility officials, was insufficient to show that Commissioner deliberately disregarded a serious risk to inmate's safety); see also Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 551 (5th Cir. 1997) (holding that supervisory official is not held liable for unintentional oversights, rather he is held to deliberate indifference standard requiring proof that official "disregarded a known or obvious consequence of his action"). Thus, Ziemba has failed to present evidence to demonstrate a genuine issue of material fact regarding the subjective prong of the deliberate indifference test. Defendants' motion for summary judgment is granted as to the claims against defendants Milling and Armstrong.

Defendants Tokarz and Levesque did not separately respond to the letter. They were aware, however, that defendant Milling had responded to the letter. Courts within the Second Circuit have held that mere receipt of a letter from an inmate is insufficient

to impute personal involvement on the correctional official to whom the letter was addressed. See Johnson v. Goord, No. 01 Civ. 9587PKC, 2004 WL 2199500, at *7 (S.D.N.Y. Sept. 29, 2004) (citing cases); Burgess v. Morse, 259 F. Supp. 2d 240, 248 (W.D.N.Y. 2003) ("[T]he fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement.") (citation omitted). Accordingly, the court concludes that Ziemba has not alleged facts sufficient to demonstrate the personal involvement of defendants Tokarz and Levesque. Defendants' motion for summary judgment is granted as to the claims against these two defendants.

IV. Conclusion

Defendants' motion for summary judgment [**doc. #32**] is **GRANTED**. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 9th day of December, 2004, at Hartford, Connecticut.

/s/DJS

_____
Dominic J. Squatrito
United States District Judge